UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: ) | Chapter 13 |
| ) | |
| **RICHARD S. BROWN,** ) | Case No. 21-13400 (MDC) |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| **JONATHAN SETHNA and** ) | |
| **CHRISTINE SETHNA,** ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| **RICHARD S. BROWN,** ) | |
| Defendant. ) | Adv. Pro. No. 22-00034 |
| ) | |

Jonathan and Christine Sethna (**"Mr. Sethna"** and **"Mrs. Sethna"** and collectively, the **"Sethnas"**), by and through their attorneys and pursuant to the Court's Order dated July 18, 2022, submit this brief concerning whether the Sethnas are entitled to priority pursuant to 11 U.S.C. § 507(a)(7), in the amount of $6,050.00 (the **"Priority Claim"**), on the grounds that it qualifies as a deposit entitled to priority status.

**PRELIMINARY STATEMENT**

The Sethnas have rightfully asserted their right to a priority claim against Defendant Richard S. Brown (the **"Defendant"**). It is undeniable that the Sethnas tendered advance payments to the Defendant for repairs on their South Philadelphia home, and he failed to complete his part of the transaction. The Defendant contends that the Sethnas have no basis for their Priority Claim because the amount does not constitute a deposit under Section 507(a)(7) of the Bankruptcy Code. Currently, Section 507(a)(7) does not define the term deposit, and the Court has ordered briefs on caselaw interpreting its meaning. As set forth below, the amount

29115358v.2

paid by the Sethnas constitutes a deposit across multiple Circuits because courts routinely consider prepayments for goods or services to be deposits. The Agreement of Sale from January 2004 (the **"Agreement of Sale"**) between the parties illustrates the necessary temporal relationship, and the highly instructive definition from the Ninth Circuit is analogous to this case.

Courts have consistently held that Section 507(a)(7) grants priority status to consumers who make an advance payment for goods or services from the business but never receive them before the business files for bankruptcy. Courts have expressed their intention to protect consumers who were induced to make deposits with reasonable reliance that the seller of a product would fulfill their obligations under the transaction. The Sethnas are entitled to their Priority Claim under Section 507(a)(7) as a result of their deposit made to the Defendant in reliance on the Defendant's promise to make repairs to their home.

## STATEMENT OF BACKGROUND FACTS AND PROCEDURAL HISTORY

1. On March 9, 2022, the Sethnas filed a Proof of Claim in the amount of $234,704.96 (the **"Proof of Claim"**) against the Defendant. The Sethnas assert their Priority Claim under 11 U.S.C. 507(a)(7) in the amount of $6,050.00 ($3,025.00 for each individual) (the **"Priority Claim"**). The Sethnas are entitled priority status under Section 507(a)(7) because their Priority Claim arises out of a deposit payment they made to the Defendant.

2. The Priority Claim originates from the underlying legal proceeding in the Pennsylvania Court of Common Pleas of Philadelphia County (the **"Court of Common Pleas"**) initiated by the Sethnas after the Defendant breached his obligations to the Sethnas under an Agreement of Sale for purchase of real property and for the construction and repairs to the residential townhome (the **"Property"**) from the Defendant. *Jonathan Sethna et al. v. Oxford*

29115358v.2

*Consulting, LLC et al.,* December Term, 2006; No. 03680 (the "**Litigation**"). In or around March 2005, the parties agreed that the Defendant and Oxford Consulting, LLC (**"Oxford"**), which was wholly owned and operated by the Defendant, would complete a punch list of repairs to the Property. After the Defendant failed to begin any repairs to the Property, the Sethnas initiated the Litigation, stating that the Defendant breached the terms and conditions of the Agreement of Sale and defrauded them with respect to their purchase of the Property and the related construction and repairs.

3. In or around November 2008 the parties, all of whom were represented by legal counsel, entered into settlement discussions that culminated in the execution of a Settlement Agreement (the "**Settlement Agreement**") to resolve the Litigation. In the Settlement Agreement, the Defendant admitted, *inter alia,* that he "personally and through the actions of Oxford, did make *materially false representations* to Mr. Sethna and Ms. Sethna in connection with the Agreement of Sale and the building of the Property…*with the intent to deceive and fraudulently obtain money and property* from Mr. Sethna and Ms. Sethna."

4. On or about January 21, 2009, the Court of Common Pleas entered a Stipulated Judgment in the amount of $125,000.00 (the **"Stipulated Judgment"**) in favor of the Sethnas and against the Defendant and Oxford, jointly and severally. The Stipulated Judgment was revived on or about April 9, 2014, and default judgment was entered in favor of the Sethnas and against Defendant and Oxford in the amount of $164,143.84 plus accrued interest. Between January 2017 and February 2019, the Defendant filed three voluntary petitions for relief under Chapter 13 of the Bankruptcy Code in the Bankruptcy court, and all three petitions were dismissed for failure to file missing documents. *See* Bankr. Case No. 17-10208-MDC; No. 18-10179-MDC; No. 19-10780-MDC. On or about March 14, 2019, the Stipulated Judgment was

29115358v.2

revived, and default judgment was entered in favor of the Sethnas and against the Defendant and Oxford in the amount of $201,089.04—the amount of the Stipulated Judgment plus accrued interest.

5. On or about December 29, 2021, the Defendant filed his fourth voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Bankruptcy Court [Docket No. 1]. The Sethnas' Proof of Claim was submitted on March 9, 2022. On or about April 18, 2022, the Defendant filed an objection to the Sethnas' Priority Claim and Secured Claim (the **"Claim Objection"**) [Docket No. 42]. The Defendant alleges that the Sethnas have no basis to assert a priority claim. On May 16, 2022 the Sethnas filed a response to the Defendant's (the **"Response to the Claim Objection"**) [Docket No. 46]. The Sethnas are entitled to the Priority Claim since they advanced funds to the Defendant for repairs he promised to make. A hearing on the Claim Objection was held on June 7, 2022, and the Court instructed the parties to brief on the issue of the definition of "deposit" under section 507(a)(7) of the Bankruptcy Code.

**ARGUMENT**

**I.    COURT INTERPRETATIONS OF "DEPOSIT" PURSUANT TO 11 U.S.C. § 507(A)(7)**

6. The Sethnas assert a priority claim pursuant to 11 U.S.C. § 507(a)(7). A claim is given priority status under this section of the code when the claim arises from the deposit of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use that were not delivered or provided before the commencement of the case. *See* 11 U.S.C. § 507(a)(7).

7. The purpose of section 507(a)(7) is to give priority in the distribution of a debtor's assets to consumers who make an advance payment for goods or services from the business but

-4-

do not receive them before the debtor files for bankruptcy. *In re Worley & Obetz, Inc.,* 615 B.R. 757 (Bankr. E.D. Pa. 2020). The Bankruptcy Code does not define the term "deposit" for purposes of § 507(a)(7), and bankruptcy courts have considered various definitions of "deposit" when construing its intended meaning in the code. *See,* e.g., *In re City Sports, Inc.,* 554 B.R. 329, 334 (Bankr. D. Del. 2016) (citing various definitions of "deposit" that multiple district courts have relied on).[1]

8. Courts in this Circuit have interpreted "deposit" to mean "money or other property transferred by an offeror to the account of the offeree in conjunction with an offer." *See, e.g., In re DeAngelis Tangibles, Inc.,* 238 B.R. 97, 98 (Bankr. M.D. Pa. 1999). Generally speaking, priority treatment is extended to claimants in situations where they have forwarded money to a debtor and never received the goods they were promised. *Id.* In *City Sports* the court added another layer to the definition "deposit" by acknowledging that the term connotes a temporal relationship between the time consideration is given and the time the right to use or possess is vested in the individual giving the consideration. *See City Sports,* 554 B.R. at 335. The court in *City Sports* stressed that the temporal aspect is important because it provides a mechanism to distinguish between consideration tendered as a deposit from consideration tendered as a mere payment for goods or services. *Id.*

9. Although the Third Circuit has not squarely addressed the issue, both *City Sports* and *DeAngelis* relied on the Ninth Circuit's determination of the intended meaning of "deposit"

---

[1] A deposit pursuant to Section 507(a)(7) has been defined as "money or other property transferred by an offeror to the account of the offeree in conjunction with an offer." *City Sports,* 554 B.R. 329 at 334 (quoting *DeAngelis Tangibles,* 238 B.R. 96, 98 (Bankr. M.D. Pa. 1999)). Other courts define a deposit as "the act of giving money or other property to another who promises to preserve it or to use it and return it in kind." *City Sports,* 554 B.R. 329 at 334 (quoting *In re WW Warehouse, Inc.,* 313 B.R. 588 (Bankr. D. Del. 2004)).

when construing the term. *See Salazar,* 430 F.3d 992 (9th Cir. 2005). The Ninth Circuit in *Salazar* interpreted "deposit" to mean "money placed with a person as earnest money or security for the performance of a contract, and an amount given as earnest money or forfeit." *Id.* at 995.

10. In *Salazar,* the creditors hired the defendants to build a swimming pool at the creditors' residence, and the creditors paid the full contract price in advance. *Id.* at 993. The debtors started but never finished building the pool and later filed for bankruptcy relief. *Id.* The court reasoned that the creditor's advanced payment constituted a "deposit" after analyzing the plain and ordinary meaning of the word actually used by Congress. *Id.* at 995 (Noting that when the language of a statute is clear, no further analysis is necessary to ascertain a word's meaning).

11. In short, *Salazar* supports the conclusion that when one has paid money to confirm a contract, that payment is a "deposit" that is afforded priority status under Section 507(a)(7). Courts applying and relying on *Salazar* have consistently reached this conclusion. *See, e.g., Superior Air Charter,* 627 B.R. 241 (concluding that prepayments by claimants for a corporation's promise to return the money in the form of flight services were deposits under Section 507(a)(7)); *Worley,* 615 B.R. 752 (Bankr. E.D. Pa. 2020) (holding that consumers who advanced payments for fuel energy that was never delivered should be afforded priority status under Section 507(a)(7)); *See DeAngelis Tangibles,* 238 B.R. 96 (Bankr. M.D. Pa. 1999) (Concluding that funds transferred by creditors to a debtor as part of an agreement to purchase precious metals satisfied the common understanding of the term "deposit").

    **A.**    **Courts Routinely Interpret Advanced Payments From a Creditor in Exchange for a Good or a Service as a "Deposit" Under 11 U.S.C. § 507(a)(7).**

12. The word deposit has several ordinary meanings. Oftentimes courts have relied on the common understanding of the term. Courts have opined that funds advanced in

furtherance of a purchase order comport with the common understanding of the term deposit without expansive maneuvering. *DeAngelis Tangibles,* 238 B.R. at 96.

13. Courts have routinely found that advanced funds and prepayments satisfy the definition of "deposit" pursuant to the Bankruptcy Code. *See Superior Air Charter,* 627 B.R. 241 (Bankr. D. Del. 2021); *Worley,* 615 B.R. at 752. At issue in *Superior Air Charter* were prepayments made by consumers for unreceived flight services. *Superior Air Charter,* 627 B.R. at 241. The court found that the payments constituted deposits under the consumer priority statute and should be granted Section 507(a)(7) priority because the consumers tendered money to the corporation in reliance on Superior Air's promise to return the money in the form of flight services, but the organization failed to fulfill its obligation to the consumers. *Id.*

14. The *City Sports* court provided an additional factor to consider. *City Sports,* 554 B.R. at 335. The court noted that the term deposit connotes a temporal relationship between the time consideration is given and the time the right to use or possess is vested in the individual giving the consideration. *Id.* The court opined that Section 507(a)(7) expressly applies to incomplete transactions, or transactions requiring additional steps to reach completion, such as money deposits for the purchase, lease, or rental of property, or the purchase of services that were not delivered or provided. *Id.* The *City Sports* court ultimately held that the value of an unredeemed gift card issued by the debtor was not a "deposit" pursuant to the Bankruptcy Code because the transaction was complete once the gift card was issued. *Id.* As further elaborated below, because the Sethnas' claim arises out of the funds they tendered to the Defendant to confirm their contract, they constitute a "deposit" and thus qualify for priority treatment under 11 U.S.C. § 507(a)(7).

-7-

> **B.     The Sethnas' Advanced Funds to the Defendant Constitute A Deposit Pursuant to 11 U.S.C. § 507(a)(7).**

15.     It is undisputed that the Sethnas' advanced funds to the Defendant in exchange for his promise to make repairs to the Property was the subject of the parties' Agreement of Sale. The Sethnas tendered money to the Defendant for the repairs he ultimately never made. The Defendant, while lodging the garden-variety Claim Objection to the Sethnas' Priority Claim, does not—and cannot—present any evidence to the contrary. The Sethnas carry their burden to show that they are entitled to priority treatment under Section 507(a)(7) on the facts and circumstances presented by this case.

16.     The advanced funds given to the Defendant by the Sethnas represents a deposit pursuant to the Bankruptcy Code because courts routinely consider prepayments for goods or services to be deposits; the Agreement of Sale between the parties illustrates the temporal relationship required of a deposit; and the Ninth Circuit's interpretation of "deposit" derives from facts that are closely analogous to this case because like in *Salazar,* the Sethnas hired the Defendant for repairs to their Property; and the Sethnas, like the *Salazar* creditors, paid the full contract price in advance. *See Salazar,* 430 F.3d at 993. Thus, the Sethnas' payment constitutes a deposit pursuant to 11 U.S.C. § 507(a)(7).

## CONCLUSION

The Sethnas are entitled to their Priority Claim under 11 U.S.C. § 507(a)(7) because they made a deposit to the Defendant and Oxford for the repairs to be made to the Property, and the repairs were ultimately never even started. The Defendant's Claim Objection fails to suggest any evidence to overcome the presumption that the Priority Claim is valid. The Sethnas have shown that their advanced payment falls within the meaning of the term deposit because the

29115358v.2

money was given to the Defendant prior to the performance of the contract, further steps were still required to complete the transaction, and this is not the first time this specific issue has been addressed in the District Courts. Courts have consistently indicated that they intend to prevent a violation of the consumer's trust by way of a fraudulent seller, and that is precisely the situation in this case.

WHEREFORE, Plaintiffs respectfully request that this Court overrule the Defendant's Claim Objection and find that the Sethnas are entitled to a priority claim up to $6,050.00 because their payment to the Defendant constitutes a deposit pursuant to 11 U.S.C. § 507(a)(7) and for such other further relief as is just.

Dated: August 8, 2022   **WHITE AND WILLIAMS LLP**

*/s/ Mariam Khoudari*
Mariam Khoudari
Amy E. Vulpio
White and Williams LLP
1650 Market Street, 18th Floor
Philadelphia, PA 19103
(215) 864-6293
(215) 864-7556 (facsimile)
khoudarim@whiteandwilliams.com
vulpioa@whiteandwilliams.com

*Counsel for Jonathan and Christine Sethna*

29115358v.2